UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| T.C., B.C., b/n/f JACINDA CHERRY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:13 CV 1213 |
| | ) |
| TOWN OF WESTVILLE, INDIANA; | ) |
| WESTVILLE BOARD OF | ) |
| COMMISSIONERS; WESTVILLE | ) |
| POLICE DEPARTMENT; and STEVE | ) |
| AMES, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

This matter is before the court on defendants' motion for summary judgment on all claims against them. (DE # 44.) For the reasons that follow, defendants' motion is granted.

## I. BACKGROUND [1]

On May 8, 2012, Officer Steve Ames received a phone call at the Westville, Indiana, police department from the mother of a minor referred to herein as "A.A." (Ames Dep. 14:6-21; DE # 45-1 at 13.) A.A.'s mother told Officer Ames "that her daughter has been continuously bullied at the school" by another minor, the plaintiff

---

[1] Plaintiffs failed to include a Statement of Genuine Disputes in conjunction with their response to defendants' motion for summary judgment, as required by Local Rule 56-1(b)(2). In any event, the facts pointed to by defendants appear largely undisputed, so the court employs those facts herein.

in this case referred to herein as "T.C."² (Ames Dep. 17:25-18:3, DE # 45-1 at 16.) Officer Ames then spoke with A.A., herself. (Ames Dep. 20:7-8; DE # 45-1 at 18.) A.A. told Officer Ames that she had been repeatedly struck with a ruler on her neck and arm by T.C. and another minor. (Ames Dep. 20:10-18; DE # 45-1 at 18.) Officer Ames observed red marks on A.A. but did not believe they could be photographed. (Ames Dep. at 20:23 - 21:1; DE # 45-1 at 19.) Officer Ames felt A.A. appeared credible. (Ames Dep. 66:7-8; DE # 45-1 at 57-58.) Officer Ames was familiar with T.C. (Ames Dep. 34:25 - 35:1; DE # 45-1 at 31.)

Officer Ames proceeded to T.C.'s home and knocked on the door, which was answered by T.C.'s brother, referred to herein as "B.C." (Ames Dep. 32:3-7; DE # 45-1 at 28.) Officer Ames asked B.C. if his parents were home, and B.C. said no. (Ames Dep. 32:13-15; DE # 45-1 at 29.) Officer Ames then asked B.C. to have his brother come forward; B.C. did so and T.C. emerged and stood in the living room. (Ames Dep. 32:17-25, DE # 45-1 at 29.) Officer Ames described his own position at this point as "outside" the doorway, "on the top step." (Ames Dep. 33:7-9; DE # 45-1 at 29.) Officer Ames told him to put his shoes on and that he was going to take him down to the police station; T.C. put his shoes on and walked outside. (Ames Dep. 35:6-14; DE # 45-

---

² This case was brought by two minors, T.C. and B.C., and their mother as next friend. However, a next friend is not legally a party in a case and plaintiffs have articulated no cause of action relevant to B.C., so the court refers to T.C. as the sole plaintiff throughout this opinion for the sake of brevity and convenience.

1 at 31.) Officer Ames placed T.C. in handcuffs, "[f]or safety purposes," since he had taken weapons like knives and air soft pistols from him in the past. (Ames Dep. 11-19; DE # 45-1 at 33.) Officer Ames took T.C. to the police station, where he sat in a room and waited until his mother arrived, about five to ten minutes later. (T.C. Dep. 40:6-20; DE # 45-3 at 41.) After thirty to forty-five minutes, T.C. and his mother went home. (T.C. Dep. 45:1-9; DE # 45-3 at 46.) It is undisputed that Officer Ames did not have a warrant to arrest T.C.

T.C. and B.C. filed the present lawsuit against Officer Ames, as well as the Town of Westville, the Westville Board of Commissioners, and the Westville Police Department. (DE # 1.) The suit alleged a number of state and federal claims including battery, municipal liability, and false arrest in violation of Indiana law and the Fourth Amendment under 42 U.S.C. § 1983. (*Id.*) Defendants moved for summary judgment, articulating defenses to all of the claims raised (DE # 44), but plaintiff responded by arguing the validity of his false arrest claims against Officer Ames, only (DE # 49). The court deems all of plaintiff's other claims abandoned. *Palmer v. Marion County,* 327 F.3d 588, 597–98 (7th Cir. 2003) (claim not addressed in response to summary judgment motion is deemed abandoned).

II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing

3

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer,* 327 F.3d at 595. In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).

## III.  DISCUSSION

At the outset, the court notes that Officer Ames has raised the defense of qualified immunity. Qualified immunity shields officers from a suit for damages if a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information the arresting officers possessed. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009). The Indiana Supreme Court has held that the qualified immunity applicable to federal claims applies equally to claims against government officials under state law. *Cantrell v. Morris,* 849 N.E.2d 488, 494 (Ind. 2006).

The court conducts a two-step inquiry when evaluating a qualified immunity claim: "First the court must determine whether the disputed conduct, as alleged, violates a constitutional right; second, the court must determine whether that right was 'clearly established' at the time of the alleged conduct." *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th Cir. 2005). Accordingly, the court first must determine whether Officer Ames violated any of plaintiff's constitutional rights during their interaction.

Plaintiff's first argument is that the warrantless arrest in this case was improper because Officer Ames lacked probable cause. Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed, was committing, or was about to commit a crime. *Abbott v. Sangamon County, Ill.,* 705 F.3d

5

706, 714 (7th Cir. 2013); *see also Maryland v. Pringle,* 540 U.S. 366, 370 (2003). It is a practical, commonsense standard that requires only the type of fair probability on which reasonable people act. *Gutierrez v. Kermon,* 722 F.3d 1003, 1008 (7th Cir. 2013); *see also Florida v. Harris,* 133 S.Ct. 1050, 1055 (2013). The standard for probable cause under Indiana law is the same as the federal standard. *Earles v. Perkins,* 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003).

The existence of probable cause depends on the elements of the predicate criminal offense as defined by state law. *Abbott,* 705 F.3d at 715. The relevant state law in this case is the State of Indiana's battery statute, which states that any person who "knowingly or intentionally touches another person in a rude, insolent, or angry manner" and causes "bodily injury" commits a Class A misdemeanor. Ind. Code § 35-42-2-1(c-d).[3] "'Bodily injury' means any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29.

In this case, A.A.'s mother told Officer Ames that her daughter had been continuously bullied by T.C. at school.[4] A.A. also told Officer Ames that she had been

---

[3] Technically, T.C., a minor, is subject to Indiana's juvenile law. Ind. Code § 31-30-1-2. However, Indiana juvenile law states that "[a] child may be taken into custody by a law enforcement officer acting with probable cause to believe that the child has committed a delinquent act," Ind. Code § 31-37-4-2, and a delinquent act is defined as an act which would be an offense if committed by an adult, Ind. Code § 31-37-1-2. Accordingly, the court addresses the battery statute relevant to adults in this opinion.

[4] An officer may rely on hearsay when determining whether he has probable cause to effectuate an arrest. *Jones v. United States,* 362 U.S. 257, 269 (1960).

repeatedly struck with a ruler by T.C. Finally, Officer Ames observed red marks on A.A.'s neck and arm. These circumstances would warrant a reasonable person in believing that T.C. had committed battery that resulted in bodily injury, including but not limited to pain. *Bailey v. State,* 979 N.E.2d 133, 138 (Ind. 2012) (repeated poking in forehead with finger caused bodily injury in form of physical pain); *Hanic v. State,* 406 N.E.2d 335, 338 (Ind. Ct. App. 1980) (red marks constituted bodily injury).

Plaintiff argues that an officer cannot execute a warrantless arrest in Indiana for a misdemeanor offense unless the conduct occurs in the officer's presence. (DE # 49 at 2-3.) This general principle is correct. *Adkisson v. State,* 728 N.E.2d 175, 177 (Ind. Ct. App. 2000). However, Indiana law provides a statutory exception: if an officer has probable cause to believe a person has committed battery *resulting in bodily injury*, the officer can make the arrest without a warrant even if the battery occurred outside of the officer's presence. Ind. Code § 35-33-1-1. As already explained above, given the undisputed facts, probable cause existed to believe that T.C. had committed a battery against A.A. resulting in bodily injury.

Plaintiff's final argument regarding the propriety of the arrest is that Officer Ames "appeared in the doorway" of the home and "for all intents and purposes" was improperly inside the home. (DE # 49 at 8.) Plaintiff is correct that the Fourth Amendment prohibits entry into a suspect's home to make a warrantless arrest. *Payton v. New York,* 445 U.S. 573, 585 (1980). However, a doorway is a public space,

*Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 689 (7th Cir. 2001) (citing *United States v. Santana,* 427 U.S. 38, 42 (1976)), and it is not improper for an officer to approach the doorway of a residence and speak to an individual. *See Hawkins v. Mitchell,* 756 F.3d 983, 993 (7th Cir. 2014) ("This is not to say that Mitchell was unreasonable to knock on the door to investigate Hawkins from a publicly accessible area. On the contrary, attempting to initiate a consensual conversation was commendable.").

Further, "*Payton* prohibits only a warrantless entry into the home, not a policeman's use of his voice to convey a message of arrest from outside the home. Moreover, nothing in *Payton* prohibits a person from surrendering to police at his doorway." *United States v. Berkowitz,* 927 F.2d 1376, 1386 (7th Cir. 1991). The undisputed facts demonstrate that Officer Ames conversed with plaintiff at the doorway, and then plaintiff exited the residence and went with Officer Ames. No violation of the Indiana or United States Constitution is evident from these undisputed facts.

Because the there is no genuine issue of material fact regarding the existence of a constitutional violation, there is no need to proceed to the second step of the qualified immunity analysis. *Billings v. Madison Metro. Sch. Dist.,* 259 F.3d 807, 816 (7th Cir. 2001). Officer Ames is entitled to qualified immunity for plaintiff's state and federal claims of false arrest, and this finding concludes this case.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 44) is **GRANTED**, and the Clerk is **ORDERED** to **ENTER FINAL JUDGMENT** in favor of defendants Town of Westville, Indiana, Westville Board of Commissioners, Westville Police Department, and Steve Ames; and against plaintiffs T.C. and B.C., b/n/f Jacinda Cherry, who shall take nothing by way of their complaint.

**SO ORDERED.**

Date: July 10, 2017

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT